IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
(Fort Lauderdale Division)

| | |
|---|---|
| RODINA FOODSTORE CORP.<br>   (Florida corporation)<br><br>      Plaintiffs,<br><br>      v.<br><br>ANDREI ELATNIKOV<br>   (alien, Russian national);<br><br>NADEJDA ELATNIKOVA aka NADYA ELATNIKOVA<br>   (alien, Russian national);<br><br>YOUTUBE LLC<br>   (Delaware company);<br><br>GOOGLE LLC<br>   (Delaware company)<br><br>      Defendants. | ACTION No.<br><br>**VERIFIED COMPLAINT**<br><br>**FOR INJUNCTIVE RELIEF AND DAMAGES** |

**NATURE OF ACTION.**

A Florida corporation brings this action, after it has been essentially attacked YouTube and other media by two Russian nationals, who, on information and belief, have a guest visa status (B-1, B-2) in the United States, traveling across the United States as video bloggers. On August 20, 2022, an unknown person, holding a videorecording device, entered the food store with the trade name 'Rodina', located in Deerfield Beach, Florida. That person, later identified as Mr. Andrei Elatnikov, who turned out to be a Russian video blogger, started to record a video film, making disparaging comments about the store. The store's customer service representative asked him to stop filming inside the store. Instead, that video blogger imposing on the customer service

1

representative an unwarranted discussion why video recording was not allowed. Faced with his insistence and rude and aggressive conduct, the customer service representative stated that he needed to leave the store, which is private property, immediately. Temporarily leaving the store, that blogger continued to video record his film from the outside, pointing to the store's façade from the parking lot. Then the visitor returned to the store, saying he was to join his wife, stood before the cash register for at least a minute and left the store again. Later in the day, that video blogger downloaded a disparaging video recording, attacking the Rodina store and urging his viewers not to come to that store anymore. The plaintiffs are asking for injunctive relief. The Court has the power to order that said video recording of defamatory and offensive nature is removed from the Internet. The complaint seeks relief for damages.

**PARTIES.**

1. Plaintiff RODINA FOODSTORE INC. (RODINA) is a Florida corporation set up in 2017, P17000024905, FEI/EIN Number 82-0865964. Since its incorporation, RODINA has been in good standing. The corporation owns a food store located at 3376 W Hillsboro Blvd, Deerfield Beach, FL 33442. An independent review of the information on the Internet shows that for over five years, until August 20, 2002, RODINA had a positive image in the community and many positive reviews of customers.

2. Defendant ANDREI ELATNIKOV aka ANDREY ELATNIKOV, is a Russian national who is, on information and belief, currently on a B-1/B-2 visa in the United States, traveling across the country and making video-blogging movies, posted on YouTube for commercial gain. ELATNIKOV's channel is called Drongogo. According to his video-blogs, as of this filing, ELATNIKOV is currently traveling in New Jersey. ELATNIKOV is the defendant in the present action because, since August 20, 2022, he has been causing RODINA tremendous

reputational damage, urging viewers not to shop at RODINA or essentially boycott the store, and seeking to put RODINA out of business.

3. Defendant NADEJDA ELATNIKOVA, aka NADYA ELATNIKOVA, is apparently the wife of the first defendant. ELATNIKOVA is Russian national who is, on information and belief, on a B-1/B-2 visa in the United States, traveling with her husband across the country and making video-blogging movies, posted on YouTube, for commercial gain. The couple's latest video blog was posted from New Jersey. ELATNIKOVA is the defendant in the present action because, since August 20, 2022, after ELATNIKOV, she posted on Instagram defamatory review of RODINA, causing RODINA tremendous reputational damage.

4. Defendant YOUTUBE LLC (YOUTUBE) is a Delaware company, organized in 2006, with main offices in California, at the address: 901 Cherry Ave, San Bruno, CA 94066. YOUTUBE, a subsidiary of GOOGLE LLC, is a leading video platform for the mass audience worldwide. YOUTUBE is a defendant in this action because, despite its editorial policies and monitoring of content, it allowed a defamatory video recording to be posted on ELATNIKOV's channel called Drongogo. Then YOUTUBE's representative ignored the repeated requests from RODINA's principals to delete that video from its platform.

5. Defendant GOOGLE LLC (GOOGLE) is a Delaware company registered in 1998, with main offices in California, at 1600 Amphitheatre Parkway, Mountain View, CA. GOOGLE acquired YOUTUBE in 2006. GOOGLE has been since controlling YOUTUBE's contents on the Internet and has exercised its managerial decision-making regarding undesirable content on the Internet, in particular posted through YOUTUBE. GOOGLE is the defendant in this action because it allowed a defamatory videorecording to be posted, despite the applicable editorial

guidelines. Thereafter GOOGLE ignored the repeated requests from RODINA's principals to delete it from its platforms.

## JURISDICTION AND VENUE.

6. Jurisdiction is proper. RODINA is a Florida corporation. Two individual defendants are Russian nationals, on information and belief, without any permanent address in the United States. Their latest video blog was posted from New Jersey. YOUTUBE and GOOGLE are Delaware companies, with their main headquarters in California.

7. The diversity of citizenship applies where a claim exceeds the statutory minimum, pursuant to 28 U.S.C. §1332.

8. The venue is proper because the offensive conduct of two individual defendants occurred in Broward County, falling under the jurisdiction of the federal Southern District of Florida.

## FACTS

9. Prior to August 20, 2022, RODINA and its principals were utterly unaware of who ELATNIKOV or ELATNIKOVA are. The scanty facts about them can be found on the Internet, including from the video blog Drongogo, that apparently both run on YOUTUBE.

10. ELATNIKOV, according to his Facebook page, was born in the City Berezniaki, Perm Region (the Urals) in Russia, in 1981. According to his Facebook page, he is employed by a Russian company called Scomi Oiltools.

11. Public sources in the U.S. show that ELATNIKOV is not a U.S. citizen and not a permanent resident, on information and belief, ELATNIKOV has no status in the U.S. other than a B-1/B-2 visa.

12. The source of ELATNIKOV's income is unclear, but apparently he is living on revenues from his video blogging on YOUTUBE and elsewhere on the Internet.

13. ELATNIKOVA, according to her Instagram information, is the wife of ELATNIKOV, also a Russian citizen. On information and belief, said defendant is most likely also with no permanent status in the United States other than a B-1/B-2 visa. Like her husband, her income source is unclear, but apparently associated with her husband's video-blogging and posting materials on the Internet.

14. ELATNIKOVA has her own Internet presence, in particular her webchannel on the Instagram, which she used for attacking RODINA, as shown below.

15. As mentioned above, ELATNIKOV and ELATNIKOVA run together the YouTube channel called Drongogo. They post various videos (according to YOUTUBE currently about 835), primarily showing their travels in the United States at present.

16. ELATNIKOV's video-blog channel Drongogo currently has about 69,500 subscribers.

17. RODINA is unaware if the Russian nationals on guest visas, ELATNIKOV and ELATNIKOVA, have a work permit or whether they pay taxes in the U.S. for their commercial gain from Drongogo and other sources.

18. According to their postings of videos on YouTube, that couple has been traveling in the United States for nearly six months. It also appears that the couple from Russia was possibly seeking some status of refugees, but their exact status in the United States is undeterminable on the Internet.

19. As mentioned above, RODINA was incorporated in 2017 and has been in good standing since then, with a solid reputation in the community.

20. RODINA's store specializes in the European types of food, including Russian, Ukrainian, and Eastern European products, that are in demand with the recent immigrants from those countries. Thereby, RODINA has nothing to do with politics.

21. Over five years in the business, RODINA has developed a positive reputation in the community as a store with reliable foodstuffs, marked by a friendly attitude of its principals toward the customers.

22. RODINA has also developed into a stable business, with sufficient income and the revenues in the seven digits.

23. On August 20, 2022, ELATNIKOV, accompanied by ELATNIKOVA, entered RODINA's food store, holding a recording device, and started video-recording some film inside the store. Simultaneously ELATNIKOV was making loud negative comments accompanying the recording, intentionally assuring that the customers in the store could hear him.

24. At a certain point, ELATNIKOV turned to the customer service representative, asking questions, and making aggressive comments. The customer representative told ELATNIKOV that filming inside the store is not allowed, that he may not remain in the store and must leave the premises of the store.

25. When RODINA's customer service representative made that statement, the license to visit the store was revoked for ELATNIKOV. He no longer had the legal right to remain on RODINA's premises, the private property.

26. ELATNIKOV did not comply with the request to leave the premises; he was still video recording the store's interior for a brief period of time.

27. Then ELATNIKOV left the store, but continued making his file from the parking lot. ELATNIKOV pointed the camera on the store's façade and, as later discovered from the video blog, making aggressive comments about RODINA.

28. After that, ELATNIKOV, who was not allowed to be on the premises anymore, returned to the store, saying he was to join his wife.

29. Shortly thereafter, ELATNIKOV, apparently assisted by ELATNIKOVA, posted video material of aggressive, offensive, and outrageous nature smearing RODINA's reputation.

30. The Internet link to that offensive video attacking RODINA is at: https://youtu.be/2PSgTbH_fK8.

31. While posting that video in the Russian language, ELATNIKOV used a cover picture with some negative innuendos, with a disparaging effect, and a Russian slang expression, roughly corresponding to "no" in English.

32. In that video, ELATNIKOV showed himself within the store's interior. His video included a verbal interaction with the customer service representative. The video was clear that the customer service representative declined permission for the video recording within the store and expressly declined that continued recording must be stopped.

33. ELATNIKOV made rude, offensive, and outrageous comments about the store, repeatedly saying on the camera before the store's facade that the store was "stinky" and that it "stinks."

34. ELATNIKOV also called the store a shabby place, causing vomiting. That outrageous attack on a food store was particularly malicious.

35. On a scale of 5 stars, ELATNIKOV urged the viewers to post only one star (the lowest) grade.

36. The video recording also showed ELATNIKOV's aggressive discussion about why RODINA disallowed him to videotape inside the store.

37. ELATNIKOV further added his video description in English, stating (pro verbatim, without editing), "Prohibition of shooting in the Russian store in America! I'm shocked! Hi all! You are on the Drongogo channel! We arrived at the Russian store in Boca Raton, Florida. I was filming a regular vlog about the life of Russians in America, and I wanted to show one of the Russian stores, but alas, I came across a barrier man who, instead of saying hello, began to ask permission to shoot and forbid filming. I was very upset that there are Russians in the United States who brought their Soviet habits to the states. I wrote a review on google maps. Be sure to subscribe to the channel and share this video with your friends!"

38. As of August 26, 2022, ELATNIKOV's defamatory blog counted, according to YOUTUBE, 3,125 views.

39. ELATNIKOV's oral statements on his video blog, in the Russian language, concerning RODINA contain rude jargon addressed to RODINA.

40. In a particular instance, ELATNIKOV said that RODINA's principals are "finished", whatever meaning he had in mind. ELATNIKOV urged his viewers to mark one star (the lowest) on RODINA's Internet rating among the community stores.

41. RODINA's principals believe that ELATNIKOV may have been paid to do what he did by RODINA's competitors, located in Broward County, or received some other benefits, in addition to commercial income from YOUTUBE.

42. ELATNIKOV solicits payments and contributions through Paypal, with information on his credit cards to make payments to.

43. Shortly after RODINA's principals found out about that video on the Internet, they started complaining with YOUTUBE and GOOGLE, asking to remove it as improper.

44. YOUTUBE and GOOGLE either ignored the requests or failed to take action and, by their inaction, declined to remove the offensive video material from the Internet.

45. Plaintiffs have no choice, but to join YOUTUBE and GOOGLE as co-defendants, because these entities have the technical ability to delete a video.

## COUNT I. TRESPASSING.
### (against ELATNIKOV)

46. Plaintiff incorporates by reference the allegations in the prior Paragraphs 1 to 45 and further states as follows.

47. As stated above, upon offensive conduct by the visitors, RODINA's customer service representative instructed ELATNIKOV to leave the premises.

48. Once ELATNIKOV was asked to leave the premises, he yet remained on the premises, and thus became a trespasser.

49. Such declination to leave the premises falls under the statutory prohibitions of Fl. St. Section 810.08.

50. Namely, the statute 'Trespass in structure or conveyance' states "(1) Whoever, without being authorized, licensed, or invited, willfully enters or remains in any structure or conveyance, or, having been authorized, licensed, or invited, is warned by the owner or lessee of the premises, or by a person authorized by the owner or lessee, to depart and refuses to do so, commits the offense of trespass in a structure or conveyance."

51. The above statute allows private claims for damages.

52. RODINA asserts a claim for damages against ELATNIKOV based upon his trespass on the private property after his ad hoc license to stay in the store was expressly withdrawn and after ELATNIKOV had the legal obligation to leave the premises immediately.

## COUNT II. VIDEORECORDING WITHOUT PERMISSION OF THE OTHER SIDE.
### (against defedant ELATNIKOV)

53. Plaintiff RODINA incorporates by reference the allegations in Paragraphs 1 to 45 and further states as follows.

54. As stated above, on August 20, 2022, ELATNIKOV, on information and belief, assisted by ELATNIKOVA in the background, recorded the conversation with RODINA's customer service representative without permission.

55. That unauthorized recording took place within the store, on the private property, the premises of a business. That area was not considered a public place but a part of the private business's premises. Any recording of a conversation with RODINA's customer service representative could take place only with express consent.

56. Instead of asking permission and overcoming the prohibition to record a conversation with RODINA's customer service representative, ELATNIKOV continued to videorecording the conversation, disregarding the lack of consent.

57. The State of Florida, where the incident of recording without permission took place, has a "two-party consent" law. The State of Florida makes it a crime to intercept or record a "wire, oral, or electronic communication" unless all parties to the communication consent. Fla. Stat. 934.03.

58. The interior of the RODINA store was not a public place for purposes of recording conversations with its principals. RODINA's store was a place of private business where the principals were authorized to make their regulations.

59. RODINA's principals were within their rights to prohibit unauthorized recordings of the communications with them. That was particularly warranted, when it appeared that the recording was made with a malicious intent to attack the business.

60. The above statute allows claims for civil damages.

61. Plaintiffs are entitled to damages for ELATNIKOV's acting in violation of the communications laws and prohibitions in force in the State of Florida, where they undertook such violations.

## COUNT III.  DEFAMATION.
### (against all defendants)

62. Plaintiffs incorporate by reference the allegations in Paragraphs 1 to 45 and further state as follows.

63. As stated above, ELATNIKOV and ELATNIKOVA created a video blog material of a highly offensive nature, disparaging the reputation of RODINA in the community and elsewhere.

64. The statements that ELATNIKOV made inside and outside the store after leaving it were defamatory, designed to damage RODINA's business as much as possible.

65. The video blog material was intended for mass audience. As mentioned above, as of the date of filing the present complaint, it has had more than 3,125 views, according to YOUTUBE's count.

66. As mentioned above, ELATNIKOVA also posted her own material on Instagram, calling RODINA a shabby place causing "vomiting", seconding the video blog material.

67. Plaintiffs are entitled to damages for defamation by ELATNIKOV and ELATNIKOVA.

11

68. On their end YOUTUBE and GOOGLE tacitly participated when they failed to control the material, follow their editorial guidelines for video blogs and ignored the requests of RODINA's principals to remove that content from the Internet as soon as possible.

**COUNT IV. INTERFERENCE WITH BENEFICIAL BUSINESS RELATIONSHIPS.**
**(against defendants ELATNIKOV and ELATNIKOVA)**

69. Plaintiffs incorporate by reference the allegations in Paragraphs 1 to 45 and further state as follows.

70. In their video-blog material, ELATNIKOV expressly urged his audience on the Internet to boycott RODINA's store, accusing it of various shortcomings.

71. The video blog quickly received over 100 comments from people who had never visited RODINA's store but trusted ELATNIKOV's description of purported shortcomings and his suggestions to boycott that store.

72. As mentioned above, ELATNIKOVA seconded the defamatory video blog with her own material on Instagram, using a highly disparaging expressing about her "vomiting" experience and thus also urging her viewers not to go to RODINA.

73. The local community of RODINA's permanent clientele and customers inevitably became aware of the offensive, shocking, if not sensational in the bad sense, video blog posted by ELATNIKOV, apparently assisted by ELATNIKOVA.

74. As a result, RODINA has lost a portion of its clientele and customers; where their number was dwindling.

75. The fact of ELATNIKOVA's repeating the same offensive statements on her Instagram page as well, were indicative that the attack was not random or incidental, but both were intentionally trying to destroy the business of RODINA.

76. Like in the video blog, ELATNIKOVA used rude language, using the word "vomiting" addressed to RODINA.

77. The acts of ELATNIKOV and ELATNIKOVA were driven by an apparent motive to destroy RODINA's business and turn away their clientele, essentially attempting to get it boycotted.

78. Plaintiffs are entitled to relief for intentional interference with beneficial business relationships, namely RODINA's beneficial relationship with its clientele.

## COUNT V. INJUNCTIVE RELIEF.
### (against all defendants)

79. Plaintiffs incorporate by reference the allegations in Paragraphs 1 to 45 and further state as follows.

80. Since August 20, 2022, RODINA has been placed under defamatory attack by ELATNIKOV and ELATNIKOVA, seeking to destroy its business and have it boycotted by their viewers and subscribers.

81. At the same time, YOUTUBE and GOOGLE, responsible for editorial policies and contents, avoiding publication of defamatory materials, did nothing to enforce the established standards for video materials posted by bloggers, requiring decency and typically disallowing personal attacks on selected small businesses.

82. YOUTUBE's and GOOGLE's inaction occurred after RODINA's principals repeatedly contacted their representatives with the request to remove the offensive video.

83. Unless injunctive relief is granted, RODINA will entail irreparable harm and may go out of business when the clientele abandons the store and instead switches to competing stores.

84. All hard work and good faith business of RODINA's principals, for over five years, will most likely be ruined after the actions of ELATNKOV and ELATNIKOVA, acting with malicious intent for commercial gain from their videos on the Internet.

85. Pursuant to F.R.Civ.P. 65, plaintiffs have an opportunity and the right to seek injunctive relief. Under certain circumstances, like here the U.S. Constitution's First Amendment does not protect the defamatory speech as here. In this particular instance, the speech was not protected, while it willfully attacked a specific food store with ulterior motives.

86. As mentioned above, on information and belief, ELATNIKOV and ELATNIKOVA selected RODINA, not as a random place for video recording, but, on information and belief, may have had benefits from the competitors in the same area. On information and belief, that defamatory attack on the store, for the first time after it has been operational for over 5 years, was not incidental.

87. Plaintiffs are entitled to injunctive relief against all defendants, ordering them to remove or delete the offensive video and prevent its further access online.

**WHEREFORE,**

Plaintiffs seek the following relief:

(a) The Court Orders to all Defendants to delete or remove the offensive defamatory content from the Internet.

(b) Grant injunctive relief against defendants ELATNIKOV and ELATNIKOV, prohibiting them from using or reusing the defamatory video material targeting RODINA on any other Internet platforms.

(c) Award damages against ELATNIKOV and ELATNIKOVA for approximately $2 million, including the estimated loss of business they targeted to be destroyed, along with punitive damages.

(d) Attorney fees and costs;

(e) Any other relief that the Court will find just and proper.

Dated: August 26, 2022

Respectfully submitted,

*George Lambert*
_____/George Lambert/
George Lambert, Esq.
The Lambert Law Firm
FL bar 1022697
421 Poinciana Drive, #1422,
Sunny Isles Beach, FL 33160;
Email: office.law.323@gmail.com
Tel. (305) 938 0600
Attorney for Plaintiff Rodina Foodstore Inc.

## VERIFICATION.

I, Marina Rogacheva, one of the principals of Rodina Foodstore Inc., verify that I am familiar with the facts and that the foregoing allegations are true and correct under the penalties of perjury under the laws of the United States.

Date: August 26, 2022

*Marina Rogacheva*
Marina Rogacheva